IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: )<br>)<br>WCI COMMUNITIES, INC., *et al.*, )<br>)<br>Debtors. )<br>)<br>_____)<br>)<br>WCI COMMUNITIES, INC., )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>LESINA AT HAMMOCK BAY )<br>CONDOMINIUM ASSOCIATION, INC., )<br>)<br>Appellee. )<br>_____) | Chapter 11<br>Bankr. Case No. 08-11643-KJC<br><br><br><br><br><br><br><br><br><br>C.A. No. 13-1397-GMS |

## MEMORANDUM

### I. INTRODUCTION

Presently before the court is an appeal by WCI Communities, Inc. ("WCI"), from the May 17, 2013 Order and Opinion (collectively, the "Bankruptcy Court Opinion"), of the United States Bankruptcy Court for the District of Delaware. (D.I. 1-1, 1-5). That Opinion granted appellee's request for declaratory judgment that the Debtor's confirmed plan of reorganization did not discharge certain claims it now seeks to raise against WCI. (D.I. 1-1). For the reasons that follow, the court will affirm the Bankruptcy Court's Opinion.

### II. BACKGROUND

On August 4, 2008, WCI Communities, Inc. and over 100 of its subsidiaries (the "Debtor"),[1] filed for chapter 11 bankruptcy relief in the United States Bankruptcy Court for the

---

[1] Although captioned as the same name, the Debtor WCI Communities, Inc. is a different legal entity than the appellant WCI Communities, Inc. The court will explain this distinction in more detail below.

District of Delaware. (Bankr. Case No. 08-11643, D.I. 1). Prior to bankruptcy, the Debtor constructed homes and operated residential communities.

As part of its restructuring plan (the "Plan"), the Debtor formed three new subsidiaries, which all filed voluntary petitions for chapter 11 bankruptcy relief on July 1, 2009. (D.I. 1-5 at 3). The Bankruptcy Court then permitted the bankruptcy cases of these new subsidiaries to be administered jointly with the Debtor's bankruptcy. (Bankr. Case No. 08-11643, D.I. 2099). The Plan provided that the Debtor would transfer substantially all of the assets of its subsidiaries to itself, and then would transfer those assets to the one of the newly formed entities. (D.I. 1-5 at 4). This new entity adopted the name WCI Communities, Inc. and became the Disbursing Agent under the Plan. (*Id.*). This new entity is the appellant in this case. (*Id.*).

The Bankruptcy Court set February 2, 2009 as the bar date for filing claims against the Debtor's estate. (D.I. 11-1). The Bankruptcy Court issued an order confirming the Debtor's Plan on August 26, 2009 (the "Confirmation Order"), which took effect on September 3, 2009. (D.I. 11-8, 11-9). The Confirmation Order provided for a general discharge of all claims against the Debtor and a permanent injunction barring any holders of claims from asserting those claims against the Debtor, its successors or assigns. (D.I. 11-8 at ¶¶ 53, 69).

Prior to filing bankruptcy, the Debtor had developed the Lesina condominium complex. The appellee in this case, Lesina at Hammock Bay Condominium Association, Inc. ("the Association"), is an independent non-profit organization that administers and manages that condominium complex. Pursuant to its Articles of Incorporation, three board of directors appointed by the Debtor would initially manage the Association, and once "Turnover"[2] occurred, the unit owners could then elect their own board of directors. (D.I. 11-12 at 378). Prior to

---

[2] Florida condominium law sets forth strict guidelines detailing when a condominium developer must "Turnover" the association. *See* Fla. Stat. Ann. § 718.301(1)).

2

Turnover, the Debtor-controlled Association filed a broad proof of claim in the Debtor's bankruptcy, specifically including claims for "any defect in workmanship in common areas . . . any unfinished common areas which the Debtor was obligated, but failed, to complete . . . [and] assessment funding of association dues for unsold units that the Debtor holds in inventory . . . ." (D.I. 11-4 at 103). The proof of claim characterized the debt as unliquidated and contingent. (*Id.*).

After the Bankruptcy Court confirmed the Debtor's Plan, WCI turned control of the Association over to the unit owners. (D.I. 1-5 at 7; *see* D.I. 11-12 at 381). After Turnover, the unit owners' Association hired engineering firms to assess potential construction defects at the Lesina Condominium. (D.I. 11-13 at 417). The engineering firms notified the Association that it discovered various defects, and the Association sent notice of these claims to WCI. (*Id.* at 412).

The parties disputed whether the Debtor's Confirmation Order discharged the Association's alleged claims. To resolve that dispute, the Association filed a motion in the Bankruptcy Court pursuant to 11 U.S.C. § 105(a) (the "Motion"), seeking the following declaratory relief: (I) A determination that the reorganized Debtor is unjustified in threatening sanctions if movant commences a Florida state court lawsuit against the "new" WCI, and (II) A determination that WCI's obligation to pay outstanding condominium assessments and deficit funding is not impeded by the Debtor's plan. (D.I. 11-10 at 248). The Association stated that it intends to file statutory claims against WCI in Florida state court for: "(1) accumulated association assessments and deficit funding, and (2) statutory warranties for construction defects." (*Id.* at 249).[3] WCI objected, principally arguing that the Debtor's Confirmation Order and 11 U.S.C. § 1141(d) discharged the Association's claims. (D.I. 11-11 at 287).

---

[3] WCI did not seek a stay of the Bankruptcy Court's decision pending appeal, thus, the Association has since initiated suit in Florida state court. (D.I. 12 at 1).

3

While the Motion was pending, the United States Court of Appeals for the Third Circuit issued its opinion in *Wright v. Owens Corning*, 679 F.3d 101 (3d Cir. 2012). *Wright* construed two prior Third Circuit opinions: *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.)*, 744 F.2d 332 (3d Cir. 1984), and *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114 (3d Cir. 2010). *Frenville* first established the applicable test for determining when a claim arose for the purposes of the Bankruptcy Code. *In re Frenville*, 744 F.2d at 336. *Grossman's* later reversed *Frenville*, and supplied a new method for fixing when a claim arose. *In re Grossman's Inc.*, 607 F.3d at 125. Finally, *Wright* carved out instances where due process requires that a court must still apply the *Frenville* test, rather than the *Grossman's* test. *Wright*, 679 F.3d at 108. Because *Wright* potentially impacted the Association's claims, the Bankruptcy Court requested supplemental briefing on the effect of that decision. (D.I. 1-5 at 2; *see* D.I. 11-17, 11-18).

The Bankruptcy Court's Opinion granted the Association's Motion, finding that the Confirmation Order did not discharge the Association's claims. (D.I. 1-1, 1-5). It reasoned that based on *Wright*, the *Frenville* test controlled the Association's claims, which did not "arise" until the Turnover date. (D.I. 11 at 12). Because Turnover occurred after the date of confirmation of the Debtor's Plan, the Bankruptcy Court further found that the Association did not hold "claims" subject to discharge under the Bankruptcy Code. (D.I. 1). WCI timely appealed to this court. The parties have briefed[4] all relevant issues and the matter is ripe for judgment. (*See* D.I. 10, 12, 15).[5]

## III. PARTIES' CONTENTIONS

WCI argues that the Bankruptcy Court misinterpreted *Wright*. (D.I. 10 at 20). In its view, the *Grossman's* test, not the *Frenville* test, should govern when the Association's claims arose.

---

[4] The court has also considered the Association's Surreply Brief (D.I. 16), WCI's Motion to Amend/Correct to Supplement the Appellate Record (D.I. 19), and the responses thereto (D.I. 17, 20, 21).

[5] Pursuant to Fed. R. Bankr. P. 8019(b), the court finds that oral argument is unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

4

First, WCI maintains that *Grossman's* applies retroactively to all earlier cases. (*Id.*). Under *Grossman's* standard, WCI contends that the Association's claims arose pre-confirmation when it was first exposed to the product or conduct that caused the alleged injury. (*Id.*). Second, WCI argues that the Debtor provided the Association with sufficient due process, therefore, the reasoning in *Wright* does not apply to the Association's claims. (*Id.* at 22). Finally, WCI asserts that the Bankruptcy Court erred by alternatively concluding that the Association's claims arose from entirely post-confirmation conduct. (*Id.* at 27). WCI requests that this Court reverse the Bankruptcy Court's May 17, 2013 Order.

In response, the Association maintains that the Bankruptcy Court correctly applied *Wright* and found that the *Frenville* test should apply to their claims. (D.I. 12 at 34). Under the *Frenville* test, the Association asserts that its claims did not arise until after the Bankruptcy Court confirmed the Debtors' plan. (*Id.*). The Association disclaims WCI's interpretation of *Wright*, arguing that WCI's due process argument is irrelevant in light of *Wright's* straightforward rule. (*Id.* at 35). The Association requests that this court affirm the Bankruptcy Court's Opinion.

## IV. STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1). When reviewing a case on appeal, the court reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. *In re United Healthcare Systems, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005). When reviewing the Bankruptcy Court's interpretation of its own orders, the District Court applies a "bifurcated approach" – it assesses great weight to the Bankruptcy Court's construction of its own language, but reviews *de novo* any attendant legal conclusions. *In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007). The dispositive portion of the Bankruptcy Court's analysis rested upon its interpretation of Third

5

Circuit precedent and applicable Florida condominium law (*see* D.I. 1-5 at 12), rather than its own language in the Confirmation Order, thus this court will engage in *de novo* review.

## V. DISCUSSION

This appeal focuses on when a "claim" arises under the Bankruptcy Code. Determining when a claim arises under the Code impacts whether a debtor's confirmed plan discharges that underlying debt. 11 U.S.C. § 1141(d) ("the confirmation of a plan ... discharges the debtor from any debt that *arose* before the date of such confirmation . . . .") (emphasis added). The outcome of this dispute hinges upon whether the Association's asserted statutory claims "arose" prior to the date of the debtor's plan confirmation.

### 1. Third Circuit Precedent

Whether a claim "arose" prior to the date of the debtor's plan confirmation is an evolving issue in the Third Circuit. In *Frenville*, the Third Circuit first announced the "accrual test" for determining when a claim arose. The accrual test instructs that the validity of a claim depends on: (1) whether the claimant possessed a right to payment, and (2) when that right arose under relevant non-bankruptcy law. *In re Frenville*, 744 F.2d at 336; *see In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir. 1988)).

In *Frenville*, the Third Circuit analyzed when an accounting firm's claims for indemnification and contribution against a debtor "arose" under the Bankruptcy Code for purposes of the automatic stay. *Frenville*, 744 F.2d at 334. According to New York state law in effect at the time, a defendant could not seek indemnification or contribution from a third party defendant until it was named a defendant in the suit for which it sought indemnity or contribution. *Id.* at 337. At the time the debtor filed bankruptcy, no party had filed suit against the accounting firm. Thus, the Third Circuit reasoned that because "[the accounting firm] did not have a claim for

6

indemnification or contribution until the banks filed their suit," . . . "[the firm's] claim, as well as its cause of action, arose post-petition." *Id.*

After "universal disapproval" of *Frenville's* accrual test, the Third Circuit revisited the issue in *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010). *Grossman's* overruled the accrual test, and "h[e]ld that a 'claim' arises when an individual is exposed pre-petition to a product or other conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code." *In re Grossman's Inc.*, 607 F.3d at 125 (citing 11 U.S.C. § 101(5)). The claimant in that case had alleged claims based on asbestos exposure. *Id.* Under this new test, the Court concluded "that [the claimant's] claims arose sometime in 1977, the date [she] alleged that Grossman's product exposed her to asbestos." *Id.*

Most recently, the Third Circuit in *Wright*, 679 F.3d 101, addressed the retroactive application of the new *Grossman's* test regarding due process concerns. Owens Corning had filed for chapter 11 bankruptcy protection in October 2000 and the Bankruptcy Court confirmed its plan of reorganization on September 26, 2006. *Id.* at 103. After confirmation, two plaintiffs filed a putative class action complaint against Owens Corning seeking damages for defectively manufactured roofing shingles. *Id.* The district court dismissed the action, finding that the plaintiffs' claims were discharged by the confirmed plan in Owens Corning's earlier bankruptcy case, as analyzed under the *Grossman's* test. *Id.* Both plaintiffs had installed the shingles (and thus had been exposed to the allegedly defective product) prior to the date of the debtor's plan confirmation. *Id.* The district court had concluded that under *Grossman's*, the claims "arose" prior to confirmation and were discharged. *Id.* at 104.

Although both plaintiffs held claims as outlined by the *Grossman's* test, the Third Circuit nevertheless found that discharging these claims would violate the plaintiffs' due process rights. *Id.* at 107. *Wright* explained:

7

> At the time the Plaintiffs received their notices, *Frenville* was the law in our Circuit (though we refrain from saying "good" law). As noted, under the *Frenville* test the Plaintiffs did not hold "claims" under the Bankruptcy Code. On reading the notices, the Plaintiffs could only understand that their rights would not be affected in any way by the referenced proceedings, and thus, correctly, would not have taken any action to ensure that their interests were represented. Not until we overturned *Frenville* and established our new test for determining when a claim exists under the Code did the Plaintiffs unexpectedly hold "claims" that arguably could be discharged in the proceedings addressed in the notices. By that time, however, the bar date had passed, the Confirmation Order had been entered, and the Confirmation Date had occurred, each of which affected the Plaintiffs' newfound claim status without an opportunity for them to be heard. Due process affords a re-do in these special situations to be sure all claimants have equal rights.

*Id.* at 108. The due process issue in *Wright* resulted from the retroactive application of the *Grossman's* test and the fact that it caused claims to potentially "arise" earlier than the *Frenville* test. Consequently, previous claimants who had operated under the correct conclusion that they did not hold claims under the *Frenville* test, could now potentially have those claims discharged in an earlier bankruptcy, without notice or an opportunity to be heard. To rectify this problem, the *Wright* Court:

> [He]ld that, for persons who have 'claims' under the Bankruptcy Code based solely on the retroactive effect of the rule announced in *Grossman's,* those claims are not discharged when the notice given to those persons was with the understanding that they did not hold claims.
>
> [For] those [claimants] who hold claims based on *Grossman's* rejection of the *Frenville* test—that is, persons exposed to a debtor's conduct or product pre-petition . . . due process calls for the outcome of the *Frenville* test to apply for bankruptcy cases in which reorganization plans are proposed and confirmed prior to June 2, 2010, when *Grossman's* was decided. After that date, persons exposed to a debtor's conduct or product pre-petition are deemed to understand that they held claims.

*Id.* at 109. "[I]f a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so." *Id.* at 107 n.6. The Court therefore concluded that "[b]ecause at the time of the Confirmation Date *Frenville* controlled the status of their 'claims,' the Plaintiffs were not afforded due process. Accordingly their claims were not

8

discharged by the Plan and Confirmation Order, and they retained their cause of action against Owens Corning." *Id.*

Because the date of confirmation of the Debtor's Plan occurred prior to June 2, 2010, the Bankruptcy Court applied the *Frenville* accrual test to determine when the Association's claims arose. (D.I. 1-5 at 11). This required analyzing when the Association first had a "right to payment" under Florida law. *Id.* (citing *Frenville*, 744 F.2d at 337). The Bankruptcy Court determined that because the Association's claims did not accrue under Florida law until the Turnover – which occurred after the date of confirmation of the Debtor's plan – they did not "arise" prior to confirmation. (D.I. 1-5 at 11; *see* Fla. Stat. Ann. § 718.111(3)). Accordingly, the Bankruptcy Court concluded that the Association's claims did not fall within the scope of the Debtors' discharge. (D.I. 1-5 at 12).

### 2. Review of the Bankruptcy Court's Application of *Wright*

WCI first argues that the Bankruptcy Court misinterpreted the Third Circuit's decision in *Wright*. (D.I. 10 at 20). It contends that *Grossman's* applies retroactively to all cases; therefore, the Bankruptcy Court incorrectly applied the *Frenville* accrual test. (*Id.*). In its view, "[h]ad the Bankruptcy Court retroactively applied *Grossman's*, as instructed by *Grossman's* and [*Wright*], it would have concluded that the Association's claims arose before the 2009 effective date, in 2007 when construction on the Tower was completed." (*Id.* at 21).

This argument ignores the Third Circuit's fully developed reasoning in *Wright*. Although the Third Circuit in *Wright* "appl[ied] the *Grossman's* test retroactively to conclude that [the plaintiff] held a claim[,]" it further explained that "for persons who have 'claims' under the Bankruptcy Code based solely on the retroactive effect of the rule announced in *Grossman's*, those claims are not discharged when the notice given to those persons was with the understanding that they did not hold claims." *Wright*, 679 F.3d at 108. Thus, although the *Grossman's* test does

9

apply retroactively, *Wright* qualified that this application cannot deprive claimants of due process rights. To the extent that it does violate those rights, *Wright* carved out an exception and mandated that the *Frenville* test, not the *Grossman's* test, must apply. The Association's claims fit squarely within that carve out. The Bankruptcy Court confirmed the Debtor's Plan prior to the Third Circuit's issuance of the *Grossman's* opinion. (*See* D.I. 11-8). Retroactive application of *Grossman's* in this instance would violate the Association's due process rights according to *Wright*. Since *Frenville* governed whether the Association held a "claim" prior to the Debtor's confirmation, it did not have notice that *Grossman's* would retroactively apply to discharge those claims. The Association "hold[s] claims based on *Grossman's* rejection of the *Frenville* test" in a case confirmed prior to June 2, 2010, and thus "due process calls for the outcome of the *Frenville* test to apply." *Id.* at 109. The Bankruptcy Court correctly concluded that *Frenville* applied to determine when the Association's claims arose.

WCI next argues that the Bankruptcy Court erred because the Association received due process by filing a claim against the Debtor's estate and having an opportunity to participate in the bankruptcy case. (D.I. 10 at 22). In WCI's view, *Wright* does not establish a bright-line test based solely on the date of the debtor's plan confirmation; rather, it only requires that a court apply the *Frenville* test to cases confirmed prior to June 2, 2010 if the claimant was not afforded due process. (D.I. 10 at 25). WCI maintains that if a party *is* afforded due process, which it argues occurred here, then *Wright* does not mandate that the *Frenville* test must apply. In other words, WCI posits that if a party (in a bankruptcy case confirmed prior to June 2, 2010) chooses to file a proof of claim and participate in a bankruptcy case, even if it does not yet hold a "claim" as recognized by the *Frenville* test, the debtor's confirmed plan can nevertheless discharge that claim.

WCI does provide some support for its argument. It cites a footnote in *Wright* that in its view indicates that the Third Circuit did not intend for *Frenville* to apply per se to all claims in

10

bankruptcy cases confirmed prior to June 2, 2010. *See Wright*, 679 F.3d at 108 n.7 ("[O]ur holding is not a bright-line rule that all persons with unknown future claims once governed by *Frenville* could not have been provided due process regardless of the adequacy of notice to those future claimants."). WCI also relies on *In re Flintkote*, 486 B.R. 99, 113 (Bankr. D. Del. 2012), which opined that *Wright*'s holding only extends to a "'special situation' where [a creditor] was an unknown claimant who was unaware of the fact that [the debtor] is in bankruptcy or that [the creditor] might eventually [have a claim]."

The court need not address the merits of WCI's argument. There is no basis for WCI's premise that the Association was afforded due process because it filed a proof of claim and participated in the Debtor's bankruptcy case. Whether a party receives proper due process depends on the circumstances of a particular case. *See Grossman's*, 607 F.3d at 127. The Supreme Court has provided that at minimum, due process requires notice and an opportunity to be heard. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Under these circumstances, the court will not impute the actions of the Debtor-controlled Association to the unit owners for purposes of due process. First, as the Bankruptcy Court correctly noted, prior to Turnover, the Debtor-controlled Association could not have asserted the statutory claims that the unit owners' Association now seeks to raise. "[The Florida Condominium] statute provides that an association's cause of action does not accrue until the unit owners have acquired control over the association." *Charley Toppino & Sons, Inc. v. Seawatch at Marathon Condo. Ass'n, Inc.*, 658 So. 2d 922, 925 (Fla. 1994) (quoting *Regency Wood Condominium, Inc. v. Bessent, Hammack & Ruckman, Inc.*, 405 So.2d 440 (Fla. App. 1st Dist. 1981)); *see* Fla. Stat. Ann. § 718.111(3). Second, when the Association did file the proof of claim and participate in the bankruptcy before confirmation, it was not independent from the Debtor. Florida law attributes the actions of a developer-controlled condominium association to the developer, not the unit owners. "Prior to the

11

developer relinquishing control of the association pursuant to subsection (4), actions taken by members of the board of administration designated by the developer are considered actions taken by the developer, and the developer is responsible to the association and its members for all such actions." Fla. Stat. Ann. § 718.301. Thus, the court concludes that the Debtor-controlled Association's filing of a proof of claim and participation in the bankruptcy case do not establish that the unit-owners' Association was afforded due process.

Finally, WCI suggests that the Bankruptcy Court's application of *Wright* produces an inequitable result in this case since the Association could recover the full value of its claims; whereas, other similarly situated creditors could only receive the fractional recovery as provided by the Debtor's Plan. (D.I. 10 at 23). The court finds no merit in this argument. This position merely raises a general critique to the Bankruptcy Code's mandate that only claims arising prior to confirmation are dischargeable. *See* 11 U.S.C. § 1141(d). And while *Grossman's* and *Wright* has complicated the issue of when "claims" arise in bankruptcy, this precedent applies equally to all creditors. The fact that the Association may recover the full value of its claims, and other creditors have had claims discharged, simply reflects the Legislature's policy in establishing a fixed cutoff date for determining the dischargeability of claims in bankruptcy.

The court concludes that the Bankruptcy Court did not err by finding that the *Frenville* test, as opposed to the *Grossman's* test, applied to the Association's claims. The Bankruptcy Court also correctly determined that under the *Frenville* test, the Debtor's Confirmation Order did not discharge these claims.[6]

---

[6] Given this conclusion, the Court need not address the Bankruptcy Court's alternative conclusion, that the Association's claims survived the Debtor's bankruptcy because they are based on assertions of entirely post-confirmation conduct. (D.I. 1-5 at 13–14; D.I. 10 at 27). Additionally, although WCI tangentially raised a *res judicata* defense in its opening brief (*see* D.I. 10 at 28–29), the Court can easily dismiss this argument. Given the holding that due process prevents the discharge of the Association's claims, the Confirmation Order could not have had any *res judicata* effect on these claims. *See In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989) ("a confirmation order is *res judicata* as to all issues decided or which *could have been decided* at the hearing on confirmation.") (emphasis added).

12

## VI. CONCLUSION

For the foregoing reasons, the court will AFFIRM the Bankruptcy Court's May 17, 2013 Order and Opinion. The court will issue an appropriate order.

Dated: July 22, 2015

_____
UNITED STATES DISTRICT JUDGE